CASE 108—PETITION EQUITY—JUNE 9.

# Kentucky Central Railway Company v. City of Paris.

### APPEAL FROM BOURBON CIRCUIT COURT.

RAILROADS — DEDICATION OF FOOTWAY ON BRIDGE — SPECIFIC PERFORMANCE.—Where a railroad company constructed for its own use a bridge across a stream by which a town was divided, building under and attached to the main structure a footway for the public use, the company itself having no use for such a passway, there was a dedication of the footway by the railroad company to the public use; and the city having lighted up the way with gas, and by its officers caused

the railroad company to make repairs, and aided in constructing the approaches, there was as complete an acceptance by the city of the dedication as was compatible with the right of the owners. And the railroad company having thus maintained the footway for more than thirty years, the city has acquired the right to its use by prescription. And the railroad company having torn down the old bridge and erected a new one in its stead, leaving off and declining to rebuild the footway, in this action brought by the city for that purpose the chancellor properly required the company to restore the way. While the restoration of such an artificial way can not be directed where the structure falls from decay or is necessarily removed, yet where the deliberate agency of the owner, unaffected by the conditions mentioned, is the destroying power, the restoration may be required.

G. C. LOCKHART FOR APPELLANT.

1. Appellee does not claim that there was any undertaking or agreement on the part of appellant or its predecessors in title to maintain the footway. Such an obligation does not arise by implication of law. (Trustees of Dover v. Fox, 9 B. M., 201.)

2. The city of Paris has no standing in court to assert any claim or right based upon a dedication which it fails to allege and show was accepted, by it in its corporate capacity. (Wilkins v. Barnes, &c., 79 Ky., 324; 2 Washburn on Real Property, 348.)

3. As to the claim by prescription it may be said this is an indispensable element of the claim of dedication *in pais*. (Beall v. Clore, 6 Bush, 676.)

4. Neither by dedication or prescription can active duties or the obligation to perpetually restore and maintain an artificial structure be imposed.

5. Conceding all that appellee asserts, can specific performance be decreed of a common law dedication or the acquisition by prescription of a way to the use of the public with the reservation to the grantor of the right to the control of the way? (See Nat. Stock Yards v. Wiggins Ferry Co., 112 Ill., 396; Wistar's Appeal, 80 Pa. St., 495.)

J. H. BRENT FOR APPELLEE.

1. The only real and appropriate relief in this case is an order compelling the railway to replace the bridge substantially *in specie* and *in situ*. (Story's Equity Jurisp., sec. 728; Waterman on Specific Peformance, note 5 to sec. 28.)

2. A court of equity has power to grant such relief. (5 Wait's Actions and Defenses, p. 765; L. & N. R. Co. v. Zaring, 9 Ky. Law Rep., 107; Fry on Specific Performance, secs. 35, 51, 52 and 54, and note 14 to sec. 40; Wyche v. Greene, 16 Ga., 49.)

Kentucky Central Railway Co. v. City of Paris.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Adopting the chancellor's statement of the facts, we find that the Kentucky Central Railway Company owns and operates a line of railroad which at Paris crosses Houston Creek; and by this creek the city of Paris is divided. The railroad was constructed in 1854 or 1855, and about that time a bridge was made over the creek by the railroad company. But few citizens then resided on the north side of the creek, by far the larger part of the town being on the south side. When the bridge was built a footway was made under and attached to it. It is not shown why this footway was built, or rather no use for it by the company is shown. The public used it from the start, and that use has increased with the growth of the city. There were many desirable building sites on the north side, and now a large part of that side is built up with attractive homes. A deprivation of the right to use the footway will seriously affect the public, and particularly those citizens residing on the north side. The approaches to either end of the bridge were so made that persons might pass with facility from Main street, in South Paris, onto the footway and, crossing over, reach an avenue now known as Mt. Airy, but then an open, unimproved street or lane. The Lexington & Covington Railroad Company built the footway, and that company and the city of Paris made the approaches thereto.

Sometime in the sixties the railroad company substituted for this passway another—safer, more substantial and more adequate to the increasing uses thereof. And again, in 1871 or 1872, for that way the Kentucky Central Railroad Company, the appellant, substituted another, superior to either of the others. In about September,

1889, the appellant tore down the old bridge and erected a new one in its stead, leaving off and declining to rebuild the foot passway in question. This action was then brought by the city to compel the rebuilding of the passway or, if such relief could not be granted, then for judgment for the sum of $5,000, to be used in building a way in place of the one taken down.

The judgment of the court required the restoration of the foot-bridge or passway, and the railway company has appealed.

It seems to us, upon the state of case presented, that there is more difficulty in the ascertainment of the remedy to be applied to right the wrong complained of than in determining the right to exist. It can not be doubted that the owners of the bridge provided the passway solely for the public and intended a dedication thereof to the public use. Had these owners needed the way, the use by others in passing over it might be held to have been merely permissive. The use of the way by the public and the control of it by the city indicate an acceptance as complete as was compatible with the rights of the owners. The city might not enter on the bridge and repair the way, but it did light it up with gas, and by its officers cause the railroad company to make repairs and aid in constructing the approaches. In a qualified way it had the oversight of it and did as much toward accepting the donation or dedication as it could do. It could not use it or control it in such manner as to interfere with the company's *absolute* dominion over the structure, but for such purposes as were consistent with the intendment of the dedication, it did use and control the way,

and we think for such length of time as to conclude the owners and constitute a right by *prescription*.

But while such right in or over an artificial way may be thus acquired, it is contended that when the structure falls from decay or is necessarily removed, a restoration can not be directed. This may be admitted. The law of Specific Performance may not be so applied, but when the deliberate agency of the owner, unaffected by the conditions mentioned, is the destroying power, are the courts powerless to afford redress? It can not be contended for a moment that a judgment for pecuniary compensation would have been appropriate or practicable. What is to be the measure of the compensatory damages? Manifestly the right to use the passway as it was and where it was is the peculiar element of value. The city does not own the structure, nor does the public, whose representative the city is, hence it may not go on the bridge to rebuild the footway. It seems to us, therefore, that the chancellor applied the only appropriate remedy when he directed the restoration. The doctrine that the exercise of this discretionary power on the part of the chancellor is within the recognized rules of equity is supported by abundant authority. (See Wait's Actions and Defenses, vol. 5, page 765; Fry on Specific Performance of Contracts, secs. 35, 51, 52 and 54, and notes to sec. 40; Story's Equity Jurisprudence, sec. 728; Waterman on Specific Performance, sec. 28, and L. & N. R. Co. v. Zaring, Superior Court (Bowden, J), 9 Ky. Law Rep., 107.

Wherefore the judgment is *affirmed*.